IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JAMES A. HENSON, JR.,** | \* |
| *Plaintiff*, | \* |
| v. | \* Case No.: RWT 11cv2719 |
| **LIEUTENANT R. LIKIN,** *et al.*, | \* |
| *Defendants*. | \* |

## MEMORANDUM OPINION

Pending are Defendants Lieutenant Rodney O. Likin, Lieutenant Jeffrey W. Johnson, Sergeant William E. Miller, Sergeant Scott E. Engle, Sergeant Phillip D. Merling, CO II Jesse W. Henderson, CO II Benjamin A. Wagner, CO II Daniel A. Krampf, CO II William L. Logsdon, CO II Marlin E. Randall, CO II Steven A. Wilson, CO II Gerald L. Wilson, Jr., CO II Brett A. Wilburn, CO II Vincent J. Lark, CO II Jeffrey A. Yommer, Captain Robert M. Friend, NBCI, and Sergeant James E. Krumpach's Motion to Dismiss, or in the Alternative Motion for Summary Judgment and Plaintiff's responses thereto.[1]  *See* ECF Nos. 31, 35-37. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

---

[1] Also pending are several non-dispositive motions. Plaintiff's Motion for Leave to proceed in Forma Pauperis (ECF No. 2) shall be granted.  Plaintiff's Motions for Preliminary Injunction (ECF Nos. 6 & 20) shall be denied for the reasons stated within this Memorandum Opinion. Plaintiff's Motions for Change of Venue (ECF No. 21) shall be denied, and  Defendants' Motions for Extension of Time (ECF Nos. 22 & 30) shall be granted *nunc pro tunc*.

**Background**

In his complaint, Plaintiff alleges that he was subject to a number of assaults while assigned to the Special Confinement Housing Unit (SCU) at Western Correctional Institution (WCI) in Cumberland Maryland. Plaintiff alleges that on November 21, 2010, he was assaulted by another inmate and Defendants Kramp, Wagner, Henderson and Miller permitted this assault. *See* ECF No. 1. Although these Defendants were allegedly aware of his injuries, they maced him, left him naked in a cell and did not provide medical treatment for four days. *Id.* On April 5, 2011,[2] Plaintiff alleges that Defendants Henderson, Miller, Krumpach, and Johnson came to his cell and administered two fifteen second bursts of pepper spray into his cell, which left him blinded and naked in the cell with no medical treatment. *Id.* On September 3, 2011, Plaintiff alleges that he was assaulted by Defendants Wilson, Yommer, Lark and Hendricks, who maced him and "beat [him] black and blue" as Plaintiff was laying in his cell. These Defendants denied Plaintiff medical attention pursuant to the order of Defendants Likin and Merlin. On September 14, 2011, Plaintiff alleges he was again beaten and maced by Defendants Wilburn and Wilson. *Id.* In correspondence to the Court, Plaintiff states that on October 27, 2011, he was again attacked by a fellow inmate. *See* ECF No. 8.

Some of Plaintiff's assault claims are connected with the cellmate assignment process. On July 13, 2011, Plaintiff alleges that Defendants Yommer and Wilson deliberately moved Kenny Larkin, a gang member and friend of the inmate involved in the November 21, 2010 assault, into Plaintiff's cell for no reason but to cause Plaintiff harm. *See* ECF No. 1. Plaintiff

---

[2] Plaintiff originally claimed this event happened on April 17, 2011. He later changed the date in his first motion for injunctive relief. *See* ECF No. 6.

alleges that, on September 2, 2011, he gave Defendants Randall, Logson and Yommer a letter written by inmate Larkin. *Id.* The letter allegedly stated that Larkin was going to kill the Plaintiff. *Id.* In retaliation for requesting protective custody, Plaintiff alleges that he was placed naked in a cell. *Id.* As relief, Plaintiff seeks protective custody status at WCI. *Id.* Plaintiff also seeks other equitable relief including a federal investigation, criminal prosecution of other inmates, and firing of correctional staff. *Id.*

At the time of the events complained of Plaintiff was assigned to WCI's Special Confinement Housing Unit (SCU). Defendant Likin has been in charge of this unit since January 29, 2011. Defendant Likin and Detective Scott Peterson of the Internal Investigation Unit submitted affidavits which indicate that there were only three incidents involving Plaintiff and cellmates and one incident involving Plaintiff and WCI staff.[3]

The first altercation involving cellmates occurred on November 21, 2010 and generated a Use of Force Report. *See* Ex. B, Use of Force Report— November 21, 2010, ECF No. 31-3 at

---

[3] Defendant Likin and Detective Scott Peterson aver that they are not personally aware of any other circumstances in which correctional officers used force against Plaintiff not involving an altercation between Plaintiff and a cellmate. *See* Ex. A, Declaration of Likin, ECF No.31-2 ¶ 5; Ex. B, Declaration of Peterson, ECF No. 31-3. The record supports these assertions. Indeed, Plaintiff has been the subject of three use of force reports at WCI. *See* Ex. C, Use of Force Report—Sept. 14, 2011, ECF No.31-4 at 8; Ex. C, Use of Force Report—October 27, 2011, ECF No.31-4 at 12; Ex. C, Use of Force Report— April 5, 2011, ECF No.31-4 at 4. The reports refute Plaintiff's claim of serious injury and denial of medical care. *Id*; *see also* Ex. D, Medical Records, ECF No. 31-5. Every use of force against an inmate must be reported and documented by staff. *See* Ex. A, Declaration of Likin, ECF No.31-2 ¶ 7. Use of pepper spray is documented and the quantity of pepper spray used is monitored and accounted for. *Id.* There is no entry in WCI's use of force logs regarding an incident involving Plaintiff on April 17, 2011. *See* Ex. A, Use of Force Log, ECF No.31-2 at 7. Each of the four officers alleged to have assaulted Plaintiff on that date denies any incident occurred. *See* Ex. F, Declaration of Lieutenant Jeffrey Johnson, ECF No. 31-7; Ex. G, Declaration of Sergeant William Miller, ECF No. 31-8; Ex. H, Declaration of Sergeant James Krumpach, ECF No. 31-9; Ex. I, Declaration of Jesse Henderson, ECF No. 31-10.

43. After hearing disturbance coming from Plaintiff's cell, Defendant Krampf observed Plaintiff "throwing closed fist punches to the head and upper body" of fellow inmate, Michael Scott, while Michael Scott attempted to defend himself with his back to the floor. Defendant Krampf further reported that Plaintiff refused orders to stop the assault on Scott until a burst of pepper spray was applied. *Id.* Both inmates refused to provide any statements regarding the incident. *Id.* Plaintiff was served with a Notice of Inmate Rule Violation and sentenced to segregation after a hearing. *Id.* The IIU concluded that Scott and Plaintiff were involved in a mutual altercation in which both inmates sustained minor injuries. *Id.*

The second altercation involving cellmates occurred on September 14, 2011 and generated a Use of Force Report. *See* Ex. C, Use of Force Report—Sept. 14, 2011, ECF No.31-4 at 8.[4] The report indicates that, after hearing shouting from Plaintiff's cell, Defendant Wilburn observed Inmate Vass swinging a plastic chair toward Plaintiff and Plaintiff throwing closed fist punches toward Inmate Vass. *Id.* The inmates were ordered to stop fighting but neither complied. *Id.* After several additional orders were given to stop fighting, Defendant Wilburn applied pepper spray to both Plaintiff and Inmate Vass; both subsequently complied with orders to come to the cell door to be handcuffed. *Id.* After this incident, Plaintiff was moved to a contingency cell and then to Special Observation Housing where he remained until September 27, 2011,[5] when Plaintiff returned to SCU and assigned a new cell partner. *Id.*

---

[4] Detective Scott Peterson asserts that Plaintiff refused to participate in the investigation process. *See* Ex B, Declaration of Peterson, ECF No-31-3.

[5] Defendants further aver that contingency cells are used to isolate disruptive inmates in order to give the inmate time to calm down and cooperate with staff. The cell contained a toilet and sink with running water. Plaintiff was never placed in the contingency cell naked. *See* Ex. A, Declaration of Likin, ECF No.31-2 ¶ 8. The contingency cells, located at the front of the tier, are

The third altercation involving cellmates occurred on October 27, 2011, and generated a Use of Force Report. *See* Ex. C, Use of Force Report—October 27, 2011, ECF No.31-4 at 12.[6] While making rounds, Officer Salesky heard what sounded like someone kicking the door in Plaintiff's cell. *Id.* He observed Plaintiff attempting to hide under his bunk with what appeared to be blood on his back and on the floor. *Id.* His cellmate, Roy Jenkins, was standing over him yelling. *Id.* Officers responded and directed both inmates to cuff up; neither complied. *Id.* Pepper spray was applied and Plaintiff stepped to the door to be handcuffed. *Id.* Jenkins produced a weapon, stating he would stab Plaintiff again, at which time an officer applied a second burst of pepper spray to Jenkins. *Id.* Jenkins was observed flushing the weapon down the toilet. *Id.* Plaintiff was treated by WCI staff for multiple puncture wounds and lacerations to the head, neck, chest, back and arms and returned to a single cell at SCU. *Id.*

The incident involving only Plaintiff and WCI staff occurred on April 5, 2011 and generated a Use of Force Report. *See* Ex. C, Use of Force Report— April 5, 2011, ECF No.31-4 at 4. Plaintiff refused to comply with direct orders to be handcuffed while his cellmate entered their cell. *Id.* As a result, WCI staff received authorization for use of force and used pepper

---

checked by correctional officers every half hour. Inmates so housed are given a bag meal which they eat in the cell. *Id.* They are also provided hygiene supplies. *Id.* Inmates remain in the contingency cell until they are willing to cooperate with correctional staff. *Id.* If cooperation is not forthcoming, after three days, Likin meets with the inmate along with a psychologist. *Id.* The inmate is provided a shower and if he can be returned to a regular cell he is returned. *Id.* If, however, the inmate remains non-compliant the psychologist may decide to place the inmate in the Special Observation Housing in the rear of the medical department. *Id.* Inmates so placed are monitored every fifteen minutes. *Id.* The conditions of the SOH cells are the same as contingency cells in the front of the tier. *Id.*

[6] Detective Scott Peterson asserts that Plaintiff refused to participate in the investigation process. See Ex B, Declaration of Peterson, ECF No-31-3.

spray to extract Plaintiff from the cell. *Id.* Plaintiff was evaluated and treated by WCI medical staff after the extraction and no injuries were noted. *Id.*

As to Plaintiff's claim that on July 13, 2011, a known gang member was assigned to his cell, Defendants maintain that allegation is false. Kenneth Larkin was placed in Plaintiff's cell on that date. Larkin is not a validated member of any gang. *See* Ex. A, Declaration of Likin, ECF No.31-2.

**Standard of Review**

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting the former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50. (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to

the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**Analysis**

A.  Failure to Protect

Generously construed, Plaintiff alleges that Defendants were deliberately indifferent by failing to provide adequate supervision and security to protect him, violating his right to be free from cruel and unusual punishment. The Eighth Amendment does recognize this right. *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).

> As noted by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994).
>
> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id*. at 833 (internal quotations and citations omitted). In a failure to protect claim, a prisoner must show: 1) that the harm he suffered was objectively serious; and 2) that prison officials acted with deliberate indifference. *Id*. at 834.

Certainly the October assault where Plaintiff was stabbed numerous times by his cell mate satisfies the objective element. The second element—deliberate indifference—has not been satisfied. Deliberate indifference in the context of a failure to protect claim means that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U. S. at 837.  Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

There is simply no evidence that any of the named Defendants were deliberately indifferent to Plaintiff's safety.  As soon as Defendants became aware that Plaintiff was involved in an altercation they took efforts to end the fight, remove Plaintiff from the cell, and provide him with medical care.  There was no indication, prior to the two assaults, that Plaintiff and his assigned cellmate were hostile to each other.  Even if Plaintiff noted his objection to being housed with a particular cellmate, as he claims, there is nothing in the record that would support a finding that the named Defendants were aware of a risk of harm to Plaintiff and disregarded it. Plaintiff and the cellmates at issue were not known enemies and were not members of rival gangs.  They had no apparent dispute.  Even if Plaintiff stated a subjective belief that he could not be housed with the other inmates, there was nothing to support that contention.

B.  Excessive Force

In determining whether prison officials used excessive force, courts evaluate if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the

response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Wilkens,* 130 S. Ct. at 1177.

Defendants deny that Plaintiff was assaulted. They further deny that the force used to quell the disturbances within Plaintiff's cell and/or to gain Plaintiff's compliance with direct orders was excessive. The record demonstrates that the force used—application of pepper spray—was minimal and was undertaken in order to keep the facility secure. Moreover, force applied was necessary because Plaintiff refused to comply with lawful orders. Additionally, the use of pepper spray was tempered since Plaintiff had an opportunity to comply with lawful orders before any spray was used. After the use of pepper spray, WCI staff provided Plaintiff with medical attention as well as a shower. Lastly, there are no medical records that support Plaintiff's claims that he was assaulted by Defendants as alleged.

C.  Injunctive Relief

Plaintiff is not entitled to any of the injunctive relief he requests. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council,*

*Inc.*, 555 U.S. 7, 20-23 (2008); *Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346 (4th Cir.2009).  Plaintiff's request for injunctive relief shall be denied, as he does not clearly establish that he would suffer immediate and irreparable injury, loss, or damage if the requested relief is not granted.   Indeed, substantial deference is to be given to the judgment of prison administrators.  *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  This deference is at its greatest when prison order is at stake.  *In Re Long Term Administrative Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (2003).  As noted above, the evidence demonstrates that Defendants believe Plaintiff is appropriately and safely housed.

Further, Plaintiff's claim for transfer or protective custody status as well as medical care are moot because "'the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *United States v. Hardy,* 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack,* 395 U.S. 486, 496 (1969)).  Under 42 U.S.C. § 1983, an actual controversy must exist at all times while the case is pending.  *See Steffel v. Thompson*, 415 U. S. 452, 459 n.10 (1974).  To the extent that Plaintiff is seeking injunctive relief regarding medical care that claim was rendered moot when he received such care.  *See* Ex. D, Medical Records, ECF No. 31-5 (evidencing receipt of medical care).  The claim for a change in his custody status was rendered moot when he was transferred from WCI to the North Branch Correctional Institution.  *See* ECF No. 47 (advising Court of change in address).

Additionally, as an alleged crime victim, he is not entitled to the relief he seeks regarding investigation and prosecution of the alleged crimes. Plaintiff has no constitutional right to insist upon the criminal prosecution of his alleged assailant. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (citizens lack standing to contest the policies of the prosecuting authority when

he himself is neither prosecuted or threatened with prosecution); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir.1988) (no right to force state to prosecute others under equal protection clause).

**Conclusion**

For the aforementioned reasons, Defendants' Motion, construed as a motion for summary judgment, shall be granted and Plaintiff's Motions for Preliminary Injunction (ECF Nos. 6 & 20) shall be denied.   Plaintiff's Motion for Leave to proceed in Forma Pauperis (ECF No. 2) shall be granted.  Plaintiff's Motion for Change of Venue (ECF No. 21) shall be denied.   Defendants' Motions for Extension of Time (ECF Nos. 22 & 30) shall be granted *nunc pro tunc*.  A separate Order follows.

Date: <u>August 9, 2012</u>                             <u>         /s/                         </u>
                                                     ROGER W. TITUS
                                                     UNITED STATES DISTRICT JUDGE